**FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Central Savings and Loan Association, Plaintiff,**

v.

**Daniel T. McSWEENEY, Frederick C. Stalder, James Marks, Defendants.**

Civ. No. 91–476–K(IEG).

United States District Court,
S.D. California.

Sept. 5, 1991.

Theresa R. Castagneto, Schall, Boudreau & Gore, San Diego, Cal., for plaintiff.

Charles H. Dick, Jr., Baker & McKenzie, San Diego, Cal., for defendant Daniel T. McSweeney.

Robert G. Steiner, Luce, Forward, Hamilton & Scripps, San Diego, Cal., for defendant Frederick C. Stalder.

## MEMORANDUM DECISION AND ORDER

KEEP, Chief Judge.

### FACTUAL BACKGROUND

On April 10, 1987, the Federal Savings and Loan Insurance Corporation (the "FSLIC") became receiver for the Central Savings and Loan Association ("Central"), a failed thrift. Claiming that former Central directors breached their fiduciary duty, the FSLIC's statutory successor, the Federal Deposit Insurance Corporation (the "FDIC"),[1] filed the instant suit on April 5, 1991 seeking to recover a portion of the $80,000,000 in losses incurred by Central.

Two defendants, Daniel T. McSweeney and Frederick C. Stalder, move to dismiss the action in its entirety. Defendants claim that: (1) the FDIC's action is time-barred because the statute of limitation governing the action expired prior to the time the FDIC became Central's receiver, and (2) the FDIC's complaint fails to plead a gross default in duty so as to appropriately maintain an action under the terms of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), Pub.L. No. 101–73, 103 Stat. 183. The FDIC contends that defendants apply the wrong statute of limitation and misread the pleading requirements imposed by FIRREA.

### DISCUSSION

Defendants' motions are based on Fed. R.Civ.P. 12(b)(6), alleging that the FDIC's complaint fails to state a claim upon which relief may be granted. A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that plaintiff can prove no set of facts which would entitle him to relief. *Church of Scientology of California v. Flynn*, 744 F.2d 694,

696 (9th Cir.1984). In this regard, the court must treat all of plaintiff's allegations as true. *Experimental Engineering, Inc. v. United Technologies Corp.*, 614 F.2d 1244, 1245 (9th Cir.1980).

#### A. Statute of Limitation

The complaint alleges that defendants engaged in various negligent acts through 1984 which constituted a breach of fiduciary duty. Defendants submit that since the alleged breach of duty is predicated on negligent conduct, the two year statute of limitation in Section 339(1) of the California Code of Civil Procedure governs.[2] Defendants direct the court's attention to several cases which have applied the two year statute to actions for breach of fiduciary duty. *See, e.g., Vucinich v. Paine, Webber, Jackson & Curtis, Inc.*, 739 F.2d 1434, 1436 (9th Cir.1984); *Burt v. Irvine*, 237 Cal.App.2d 828, 865, 47 Cal. Rptr. 392 (1965). Since there are no tolling allegations in the complaint, and since the cause of action is based on conduct occurring through 1984, defendants contend that the FDIC's cause of action was barred as of 1986, a year before it became receiver. *See FDIC v. Former Officers & Directors of Metro. Bank*, 884 F.2d 1304, 1309 n. 4 (9th Cir.1989) (FDIC may not revive a time-barred claim when it assumes control of an entity).

In contrast, the FDIC claims that the "catch-all" four year period in Section 343 of the California Code of Civil Procedure governs this matter.[3] The FDIC argues that the cases cited by defendants, *Vucinich, supra*, and *Burt, supra*, were effectively superseded by more recent authority applying the four-year period. *See, e.g., Davis & Cox v. Summa Corp.*, 751 F.2d 1507, 1520–21 (9th Cir.1985); *David Welch*

---

1. On August 9, 1989, President George Bush signed into law the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), Pub.L. 101–73, 103 Stat. 183. Under FIRREA, the assets and liabilities of the FSLIC were transferred to the FDIC for management.

2. Section 339(1) provides that a two year time-bar governs

[a]n action upon a contract, obligation or liability not founded upon an instrument of writing ...
Cal.Civ.Proc.Code § 339(1) (West Supp.1991).

3. According to Section 343

[a]n action for relief not hereinbefore provided for must be commenced within four years after the cause of action shall have accrued.
Cal.Civ.Proc.Code § 343 (West 1982).

*Co. v. Erskine & Tulley*, 203 Cal.App.3d 884, 893, 250 Cal.Rptr. 339 (1988). Applying the longer period, the action was still viable on April 10, 1987 when the FDIC became receiver, and because FIRREA provides the FDIC an extended filing period of four years on those claims not time-barred when it becomes receiver, the FDIC properly filed suit on April 5, 1991.[4]

In response, defendants contend that *Davis & Cox, supra,* cannot legitimately be read to overrule *Vucinich, supra.* Defendants argue that the cases are critically distinguishable in that *Vucinich* considered a breach of fiduciary duty claim based on *negligent* conduct, as is the case here, while *Davis & Cox* dealt with a case of *intentional* breach of fiduciary duty. As such, defendants contend that *Vucinich*'s two-year statute must apply. I reject this distinction.

Neither *Vucinich* nor *Davis & Cox* draw a negligent versus intentional tort distinction. Rather, each case simply asserts, without much discussion, diametrically distinct time periods for a breach of fiduciary duty. However, those courts which have squarely made a choice between *Vucinich* and *Davis & Cox* have followed *Davis & Cox,* not because the particular case was dominated by issues of intentionality versus negligence, but because *Davis & Cox* was the last word from the Ninth Circuit on the appropriate time-bar for claims of fiduciary duty. *See, e.g., FSLIC v. Kidwell,* 716 F.Supp. 1315, 1318 (N.D.Cal. 1989); *David K. Lindemuth Co. v. Shannon Financial Corp.,* 660 F.Supp. 261, 264-65 (N.D.Cal.1987).

Furthermore, the four year time-bar applied in *Davis & Cox* has been found better reasoned. *See Kidwell,* 716 F.Supp. at 1318; *Lindemuth,* 660 F.Supp. at 265. The *Vucinich* court asserts the two year statute in dictum, without the citation of authority. *See id.* at 1436. In contrast, the *Davis & Cox* court made a specific holding that a cause of action for breach of fiduciary duty cannot be accorded the same time-bar as that statutorily accorded malpractice actions since a claim for breach of fiduciary duty is a distinct cause of action. *See id.* at 1520–21 & n. 3. As a limitations period is not otherwise provided for breach of fiduciary duty claims, the four year "catch-all" period dictated by Section 343 applied. *Id.* For this proposition, *Davis & Cox* relied, *inter alia,* on *Robuck v. Dean Witter & Co.,* 649 F.2d 641 (9th Cir.1980), where the Ninth Circuit specifically held that the statute of limitation period for breach of fiduciary duty is not otherwise provided for under state law, and as such, Section 343 squarely governs such claims. *Id.* at 644. Thus, unlike *Vucinich,* which made no specific holding with respect to the appropriate time period and failed to cite authority, the *Davis & Cox* court firmly rooted its adoption of the four year period in precedent.[5]

■ Defendants McSweeney and Stalder contend, however, that it is the gravamen of plaintiff's complaint and the nature of the right sued on, rather than the form of the action or relief demanded, that determines which statute of limitation applies. *See, e.g., Davis & Cox,* 751 F.2d at 1520. Since the breach of fiduciary claim here is dominated by negligent acts, defendants

---

**4.** When filing a claim on a cause of action viable when it becomes receiver, the FDIC is entitled to an additional three years, or the applicable State statute of limitations, whichever is longer, from the date it became receiver. 12 U.S.C. § 1821(d)(14). Should the four year statute apply, § 1821(d)(14) awards the FDIC four years to file an action from the date it became Central's receiver.

**5.** I note in passing that the distinct time periods asserted in *Vucinich* and *Davis & Cox* are not indicative of a split in the Ninth Circuit. The *Vucinich* court asserted the two year period in dictum without making a specific holding with

respect to the time-bar; therefore, while the decision is instructive, it has little precedential value on the statute of limitations issue. *See generally* 1B Moore's Federal Practice ¶ 0.402[2] (decision of appellate court is precedent only to the extent that it determines an issue of law squarely before it for review). It thus makes eminent sense that *Davis & Cox* would not cite *Vucinich* in considering the appropriate limitations period but instead would rely on the squarely applicable holding in *Robuck* which, parenthetically, *Vucinich* failed to consider. Consequently, as between *Vucinich* and *Davis & Cox,* only the latter is binding in the Ninth Circuit as *stare decisis.*

argue that the two-year statute for negligence should apply. A similar argument was raised in *Robuck* where defendants argued that since an intentional breach of fiduciary duty is nothing more than a fraud allegation, the limitations period applicable to fraud should govern. In rejecting this argument, the *Robuck* court underscored that a cause of action for breach of fiduciary duty is its own "right sued on" and cannot be compartmentalized into another rubric for time-bar purposes. Therefore, defendants' attempt to characterize the FDIC's claim for breach of fiduciary duty, as nothing more than a common negligence claim, must fail.[6]

Defendants offer an old California Supreme Court case, *Fox v. Hale & Norcross Silver Mining Co.*, 108 Cal. 369, 41 P. 308 (1895), which allegedly holds that negligent breaches of fiduciary duty are applied to the two-year statute. Defendants contend that the existence of such a case forecloses this court's reliance on *Davis & Cox* which failed to cite a state case or consider the legal force of *Fox*. This contention is unpersuasive. First, this court does not have the authority to ignore the most recent Ninth Circuit decision on a particular issue, even if the Ninth Circuit misapplied, misinterpreted or ignored applicable State law. *See Barretto v. United States*, 694 F.2d 603, 607 (9th Cir.1982). Second, *Fox* did not settle the issue. In *Fox*, the court considered whether an action for negligence against directors of a corporation should be accorded the limitations period applicable to fraud claims; breach of fiduciary duty was not at issue in *Fox*. Since breach of fiduciary duty is an independent cause of action from other common law claims, *see Robuck, supra*, the *Fox* case is inapposite.

In sum, I hold the four-year statute of limitation applies to a cause of action alleging breach of fiduciary duty, whether the breach is predicated upon negligent or intentional acts.

## B. *Degree of Fault*

Defendants contend that the FDIC's action may not lie because FIRREA allegedly limits the actions the FDIC may file against former thrift directors to those cases where the directors' conduct is pled as grossly negligent or intentional. Defendants rely on FIRREA's language at 12 U.S.C. § 1821(k) which states that

[a] director or officer of an insured depository institution may be held personally liable for monetary damages in any civil action by ... [the FDIC] ... *for gross negligence*, including any similar conduct or conduct that *demonstrates a greater disregard of a duty of care (than gross negligence) including intentional tortious conduct*, as such terms are defined and determined under applicable State law. Nothing in this paragraph shall impair or affect any right of the [FDIC] under other applicable law. (emphasis added).

Defendants submit two published decisions from other circuits that interpreted this language to create a minimum pleading requirement of a gross default in duty before the FDIC may legitimately file suit. *FDIC v. Canfield*, 763 F.Supp. 533 (D.Utah 1991); *Gaff v. FDIC*, 919 F.2d 384, 391 (6th Cir.1990) (dictum). As the default in duty alleged in the complaint at bar is based an ordinary negligence defendants contend that the complaint must fail.

The FDIC argues that defendants' reading of Section 1821(k), as well as *Canfield*, is erroneous and should not be adopted. The FDIC focuses on the last sentence of Section 1821(k) which states that "nothing in this paragraph shall impair or affect any right of the [FDIC] under other applicable law." The FDIC asserts that the plain meaning of this phrase, read in tandem

---

**6.** I note that the *Robuck* and *Davis & Cox* courts' holdings protecting the distinct integrity of a claim for breach of fiduciary duty is well in line with California case law dictating that suits brought by beneficiaries of a trust relationship are unique, and not otherwise accounted for, meriting the particularly long limitations period in Section 343. *See* 3 Witkin, Cal.Procedure, *Actions*, §§ 469–72, and cases cited therein. Indeed, since *Robuck*, no federal or state court has applied anything other than the four-year period to such claims. *See, e.g., Kidwell*, 716 F.Supp. at 1318 (federal); *David Welch Co.*, 203 Cal. App.3d at 893, 250 Cal.Rptr. 339 (state).

with the rest of the paragraph, ensures that at a minimum the government may proceed against directors or officers for gross conduct, while at the same time, expands the FDIC's rights in states where directors have not been insulated from simple negligence. I agree with the FDIC's contentions, and decline to adopt the Utah district court decision.

■ The plain language of a statute is controlling in the interpretation of a statutory provision. *Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990). In this regard, the first sentence of Section 1821(k) states only that the FDIC "may" bring suits for gross negligence and greater violations of duty. The plain words of the statute do not indicate exclusivity; this court is prohibited under standard norms of statutory construction from implying such exclusivity when Congress has not done so itself. *See, e.g., Rose v. Rose*, 481 U.S. 619, 627–28, 107 S.Ct. 2029, 2034–35, 95 L.Ed.2d 599 (1987).

Reading the first sentence plainly—as nonexclusive—the second sentence follows logically; notwithstanding the permissive authority granted in the first sentence, it is not intended to bar the FDIC's use of "other applicable law." If the first sentence were presumed exclusive, the second sentence would become mere surplusage which would contravene "the elementary canon of construction that a statute should be interpreted so as not to render one part inoperative, ..." *Mountain States Telephone and Telegraph Co. v. Pueblo of Santa Ana*, 472 U.S. 237, 249, 105 S.Ct. 2587, 2594, 86 L.Ed.2d 168 (1985).

Indeed, if the first sentence were read to create an exclusive remedy, pre-existing common law rights entitling the FDIC to pursue causes of action for less than gross conduct would be eviscerated. However, by statutory necessity, FIRREA would have had to specifically repeal the common law if it intended to do so. *Norfolk Redevelopment and Housing Authority v. Chesapeake and Potomac Telephone Co.*, 464 U.S. 30, 35, 104 S.Ct. 304, 307, 78 L.Ed.2d 29 (1983). Not only is such a specific repeal nonexistent, the second sentence of Section 1821(k) appears to affirm that no such repeal was intended as it states that the first sentence does not foreclose the FDIC's resort to "other applicable law."

■ In addition, the legislative history supports this court's reading of Section 1821(k). When considering the Section, Congress was particularly concerned that in recent years many states had enacted legislation "insulating" directors and officers for certain suits, and that while no one wanted to preempt all of state law, it was viewed as necessary to "allow the FDIC to sue a director or officer guilty of gross negligence or willful misconduct, even if State law did not allow it." 135 Cong.Rec. S4278–78, S4278–79 (April 19, 1989). Thus, the legislative history confirms that Congress established a jurisdictional basis upon which the FDIC could be assured of bringing suit in the most serious cases of alleged director mismanagement, while at the same time not prejudicing the FDIC's full range of rights in those states that had not passed protective legislation for directors.

The two out-of-circuit cases upon which defendants rely are not persuasive. The *Gaff* case falls short since it simply assumes in dictum, without discussion, that gross conduct is a pleading requirement imposed by FIRREA. The *Canfield* decision is unpersuasive for a variety of reasons which I discuss in turn.

In *Canfield* the court reasoned that: (1) since the second sentence of Section 1821(k) does not specifically state that the FDIC may pursue "other applicable *State* law", it must be referring to other applicable portions of FIRREA; (2) reading the second sentence to apply solely to other portions of FIRREA is the only reading that would not make the first sentence surplusage; and (3) the public interest supports a minimum standard of gross conduct.

I note first that the lack of "state" in the second sentence is not instructive. The *Canfield* court found that since the first sentence of Section 1821(k) refers to "appli-

cable State law", that Congress would have used "applicable *State* law" in the second sentence if it meant to do so. Since it did not, Congress must have been referring to FIRREA itself. Typically, however, when a statute refers to itself, rather than other federal law or state common law, it does so by stating "in this Title" or "in this Chapter." *See, e.g.,* 12 U.S.C. § 1821(e)(8) & (i). Thus, were Congress referring to FIRREA in the second sentence one would have expected language stating: "other applicable law *under this Title* or *Chapter.*"

Further, the plain meaning of "applicable law" may not be restricted to one particular law (i.e., FIRREA); rather, standard statutory construction dictates that "applicable law" is all relevant law not otherwise excluded. *See Abbott Laboratories v. Gardner,* 387 U.S. 136, 145–46, 87 S.Ct. 1507, 1513–14, 18 L.Ed.2d 681 (1976). Thus, it is more sensible to read the second sentence as a reference to all other applicable state and federal law.

This analysis is bolstered by the fact that other portions of FIRREA in fact entitle the FDIC to access "all rights, titles, powers, and privileges" enjoyed by "any stockholder, member, ..., depositor, officer, or director" of the thrift. 12 U.S.C. § 1821(d)(2)(i). Since the stockholders of a failed thrift maintain certain common law rights for claims based on less than gross conduct, FIRREA itself means to provide the FDIC access to that common law arsenal.

The *Canfield* court also reasoned that the second sentence must be restricted to rights under FIRREA alone because it found it impossible to read the second sentence in any other fashion so as not to make the first sentence a nullity. As noted earlier, the first sentence is not made a nullity by finding that it is nonexclusive to the FDIC's authority to pursue other applicable state remedies.

Further, the *Canfield* court's conclusion that public policy supports a minimum pleading requirement based upon gross conduct is without support. Citing no authority, the court noted that it is important to have quality people serve as directors,

and that if the specter of government suits loom for less than gross conduct, such quality people would not become officers and directors.

This theory of the public interest is at odds with the goals of FIRREA. Among other things, FIRREA sought to *strengthen* the hand of federal regulators in pursuing those responsible for the mismanagement of failed thrifts. *See* Pub.L. 101–73, § 101(9) and (10). The *Canfield* reading, however, *weakens* the FDIC's position, imposing a more stringent pleading burden on the FDIC than that which faced its predecessors in interest.

Moreover, read as *Canfield* suggests, Section 1821(k) creates the perverse incentive for a director in an institution that is having financial difficulty to permit the thrift to fall into ruin—benignly and with a lesser degree of fault than gross negligence—since the director's own exposure would be greatly reduced upon the institution of a receivership.

■ In light of FIRREA's expansive regulatory purposes, and the unambiguous statutory language of Section 1821(k), I hold that the first sentence is appropriately read as a limited preemption of state laws which would otherwise obstruct *any* action for director mismanagement and the second sentence ensures that the first sentence is not construed to prejudice the FDIC's rights in those states where its predecessors in interest had at their disposal a wider range of remedies.

I concede that at first blush this opinion appears internally inconsistent. Part A finds that this action is not one for simple negligence for which the two-year limitations period would be applicable; Part B emphasizes that FIRREA permits allegations pertaining to simple negligence. This incongruity, however, is more apparent than real. The first part of the decision holds simply that irrespective of whether a claim for breach of fiduciary duty is based on negligent or intentional conduct, the claim is properly characterized as a breach of fiduciary duty to which the four-year statute of limitation applies. The second part found that FIRREA erects no bar to a

**1160**

breach of fiduciary duty claim which could not be termed a gross default in duty per Section 1821(k). This second holding, however, has no substantive effect on the first: an allegation for breach of fiduciary duty is a discrete legal theory that may not be collapsed into a claim of simple negligence for statute of limitation purposes, whether the particular breach of fiduciary duty is characterized as a gross default in duty or not.

Accordingly, IT IS ORDERED that defendants motions to dismiss are denied.