KOZINSKI, Circuit Judge,
concurring in part, dissenting in part:
I agree that the government hasn’t shown Fernandez-Ruiz committed a crime of domestic violence under 18 U.S.C. § 16(a) on this record. I reach this conclusion substantially for the reasons stated in the majority opinion, and because I would not lightly disregard the view of five other circuits that have considered the issue. See Tran v. Gonzales, 414 F.3d 464, 471-72 (3d Cir.2005); Bejarano-Urrutia v. Gonzales, 413 F.3d 444, 447 (4th Cir.2005); Jobson v. Ashcroft, 326 F.3d 367, 372-73 (2d Cir.2003); Bazan-Reyes v. INS, 256 F.3d 600, 609-10 (7th Cir.2001); United States v. Chapa-Garza, 243 F.3d 921, 925-27 (5th Cir.2001). I find the dissent’s effort to carve out a special rule for domestic violence cases unpersuasive.
However, I cannot agree with the majority’s refusal to send the case back to the BIA for reconsideration in light of our opinion. The government presented its case both to the IJ and the BIA when our caselaw was controlled by United States v. Ceron-Sanchez, 222 F.3d 1169 (9th Cir. 2000), and before the Supreme Court decided Leocal v. Ashcroft, 543 U.S. 1, 125 S.Ct. 377, 160 L.Ed.2d 271 (2004). Under that regime, the government had no reason to present evidence that would sustain its burden under a modified categorical approach. Now that the law has changed, *1136 the government is entitled to make its case under the new standard.
I realize that INS v. Ventura, 537 U.S. 12, 17, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002) (per curiam), and Gonzales v. Thomas, — U.S. --, -, 126 S.Ct. 1613, 1615, 164 L.Ed.2d 358 (2006) (per curiam), are not on all fours because both involved questions as to which the agency had special expertise. But Ventura also held that, when an opinion changes the legal landscape, giving the government an opportunity to “present! ] ... further evidence” is an independent ground for a remand. 537 U.S. at 18, 123 S.Ct. 353. I see no reason to do otherwise here. If the government has no such evidence, a remand will do no harm. But, if the government does have or can obtain such evidence, our refusal to remand will mean that someone Congress meant to have deported may remain at large in the United States, perhaps to offend again.
Having twice been summarily reversed for failing to remand to this very agency, I would tread especially lightly in this area. Discretion, in this case, is not only the better part of valor, but the better part of justice as well.
WARDLAW, Circuit Judge, with whom Circuit Judges O’SCANNLAIN, BYBEE, and CALLAHAN join dissenting:
Men do not beat their wives by accident. Blind to this truth, the majority ignores the realities of domestic violence and disregards congressional intent to hold that an Arizona domestic violence conviction is not a “crime of domestic violence” for purposes of a federal immigration law. The majority’s hypertechnical analysis stretches the Taylor v. United States, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), categorical approach to absurdity and misreads Leocal v. Ashcroft, 543 U.S. 1,125 S.Ct. 377, 160 L.Ed.2d 271 (2004), as barring all crimes involving the reckless use of force from qualifying as “crimes of violence” under 18 U.S.C. § 16. I respectfully dissent.
I
On January 13, 2003, Jose Roberto Fernandez-Ruiz, a native and citizen of Mexico and a lawful permanent resident of the United States, pled guilty in Arizona state court to misdemeanor domestic violence/disorderly conduct and misdemeanor domestic violence/assault. He was sentenced to six months in jail and three years of probation. Fernandez-Ruiz had previously been convicted of theft and domestic violence/assault and had twice violated his probation. His 2003 domestic violence/assault conviction, designated a class two misdemeanor, establishes that he violated either subsection (1) or (2) of Arizona Revised Statute (A.R.S.) § 13-1203(A), which states in relevant part:
A person commits assault by:
1. Intentionally, knowingly or recklessly causing any physical injury to another person; or
2. Intentionally placing another person in reasonable apprehension of imminent physical injury....
Because the record of conviction states that Fernandez-Ruiz committed a domestic violence offense, he must have been in a domestic relationship with his victim, as defined by A.R.S. § 13-3601(A):
“Domestic violence” means any act which is a dangerous crime against children as defined in § 13-604.01 or an offense defined in [any one of twenty Arizona statutes, including § 13-1203], if any of the following applies:
1. The relationship between the victim and the defendant is one of marriage or former marriage or of persons residing or having resided in the same household.
*1137 2. The victim and the defendant have a child in common.
3. The victim or the defendant is pregnant by the other party.
4. The victim is related to the defendant or the defendant’s spouse by blood or court order as a parent, grandparent, child, grandchild, brother or sister or by marriage as a parent-in-law, grandparent-in-law, stepparent, step-grandparent, stepchild, step-grandchild, brother-in-law or sister-in-law.
5. The victim is a child who resides or has resided in the same household as the defendant and is related by blood to a former spouse of the defendant or to a person who resides or who has resided in the same household as the defendant.
In March 2003, the Immigration and Naturalization Service sought to deport Fernandez-Ruiz for committing a crime of domestic violence. Under 8 U.S.C. § 1227(a)(2)(E)®,
Any alien who at any time after admission is convicted of a crime of domestic violence, a crime of stalking, or a crime of child abuse, child neglect, or child abandonment is deportable. For purposes of this clause, the term “crime of domestic violence” means any crime of violence (as defined in section 16 of Title 18) against a person committed by a current or former spouse of the person, by an individual with whom the person shares a child in common, by an individual who is cohabiting with or has cohabited with the person as a spouse, by an individual similarly situated to a spouse of the person under the domestic or family violence laws of the jurisdiction where the offense occurs, or by any other individual against a person who is protected from that individual’s acts under the domestic or family violence laws of the United States or any State, Indian tribal government, or unit of local government.
Eighteen U.S.C. § 16(a) in turn defines a misdemeanor “crime of violence” as: “(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another.”
Relying on our decision in United States v. Ceron-Sanchez, 222 F.3d 1169 (9th Cir. 2000), the BIA concluded that Fernandez-Ruiz’s 2003 conviction was a “crime of domestic violence” and affirmed an immigration judge’s decision ordering Fernandez-Ruiz deported. Fernandez-Ruiz petitions for relief from his deportation order on the ground that Leocal overruled Ceron-Sanchez and established that a conviction such as his, which may have been based on reckless conduct, is not categorically a crime of domestic violence. See generally Taylor, 495 U.S. at 600-02, 110 S.Ct. 2143.
II
Common sense, statutory language, and precedent all compel the conclusion that Fernandez-Ruiz’s domestic violence conviction necessarily involved the use of physical force against the person of another and was therefore a crime of violence under 18 U.S.C. § 16(a) and a crime of domestic violence under 8 U.S.C. § 1227(a)(2)(E)®.
A
Notwithstanding the majority’s attempt to erase the identity of Fernandez-Ruiz’s victim and treat his crime as a simple assault, Fernandez-Ruiz was convicted for “domestic violence/assault,” and the victim was Fernandez-Ruiz’s girlfriend and the mother of his daughter. The relationship between Fernandez-Ruiz and his victim cannot be dismissed as irrelevant; it is an element of his crime, and under Leocal we are required “to look to the elements and the nature of the offense of convic *1138 tion....” 543 U.S. at 7, 125 S.Ct. 377. Instead of analyzing the nature of the offense of conviction, here a violation of A.R.S. § 13-3601(A), the majority analyzes A.R.S. § 13-1203(A), without addressing how the additional element of the crime described in § 13~3601(A) impacts the nature of the crime. The majority justifies this analytical leap by noting that the perpetrator-victim relationship that is an element of § 13-3601(A) is included as part of the definition of a crime of domestic violence under 8 U.S.C. § 1227(a)(2)(E)®. Maj. Op. at 17860 n. 5. However, what the majority does not explain is why the inclusion of similar language in a federal immigration law justifies ignoring an element of an Arizona criminal law under Taylor categorical analysis.
The majority’s facile elision gives short shrift to Arizona’s requirement that the victim be related to the perpetrator; the very existence of a separate statutory species of assault aimed at domestic violence demonstrates that the additional element of relationship is significant to the nature of the crime. One owes a special duty of care toward one’s spouse and child, arising from the trust and related vulnerability that characterize domestic relationships. See Grageda v. INS, 12 F.3d 919, 922 (9th Cir.1993) (“[A] spouse is committed to a relationship of trust with, and may be dependent upon, the perpetrator. This relationship makes the crime of spousal abuse different from violence between strangers or acquaintances ....”); see also, e.g., Patricia Tjaden & Nancy Thoennes, Nat’l Inst, of Justice & Ctrs. for Disease Control & Prevention, Prevalence, Incidence, and Consequences of Violence Against Women: Findings from the National Violence Against Women Survey 2 (1998) (“Violence against women is primarily partner violence: 76 percent of women who were raped and/or physically assaulted since age 18 were assaulted by a current or former husband, cohabiting partner, or date, compared with 18 percent of the men.”).
It is precisely the vulnerability of those in domestic relationships, particularly women and children, that led Congress to enact 8 U.S.C. § 1227(a)(2)(E)®, which is designed to protect victims and punish perpetrators of domestic violence. As Senator Robert Dole stated upon introducing the original version of the language that now appears at 8 U.S.C. § 1227(a)(2)(E)®:
[O]ur society will not tolerate crimes against women and children.... Nor should we have to wait for that last violent act. When someone is an alien and has already shown a predisposition toward violence against women and children, we should get rid of them the first time.
142 Cong. Rec. S4058-02, S4059 (1996) (statement of Sen. Dole); see also Violence Against Women Act of 1994, Pub.L. No. 103-322, §§ 40001-40703, 1994 U.S.C.C.A.N. (108 Stat.) 1796, 1902-55, invalidated in part by United States v. Morrison, 529 U.S. 598, 627, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000). And it is this vulnerability that the majority pretends does not exist when it refuses to acknowledge the identity of Fernandez-Ruiz’s victim and instead endeavors to sanitize Fernandez-Ruiz’s crime by relegating to a footnote the fact that this is a crime of domestic violence. See Maj. Op. at 17860 & n. 5. Instead of addressing Fernandez-Ruiz’s crime of conviction, the majority sets out to rewrite the law for all crimes that may be committed with a mens rea of recklessness. See Maj. Op. at 17872 (“[W]e expressly overrule our cases holding that crimes of violence under 18 U.S.C. § 16 may include offenses committed through the reckless, or grossly negligent, use of force.”)
*1139 Fernandez-Ruiz did not accidentally cause his girlfriend and the mother of his daughter physical injury; he did so “[i]ntentionally, knowingly or recklessly.” A.R.S. § 13-1203(A)(1). In light of the special duty of care Fernandez-Ruiz owed his victim, it is difficult to imagine how he could have committed his crime recklessly, and impossible to conclude he could have done so without using force against her. Cf. Flores v. Ashcroft, 350 F.3d 666, 672-73 (7th Cir.2003) (Evans, J., concurring) (lamenting the absence of common sense in courts’ application of the Taylor categorical approach and noting that “Flores actually beat his wife[;] .... [a] common-sense review here should lead one to conclude that Flores committed a ‘crime of domestic violence’ ”). Domestic abusers may be drunk or otherwise incapacitated when they commit their crimes, and they may plea bargain down from a felony to a misdemeanor or from a statute that requires a mens rea of intentionality to one that can be satisfied by recklessness. But this does not alter the nature of domestic violence as a crime involving the use of force against someone in a domestic relationship, a crime that is categorically a “crime of domestic violence.” See 8 U.S.C. § 1227(a)(2)(E)®.
The majority seeks refuge from the plain meaning of domestic violence in hypothetical suggesting that an Arizona domestic violenee/assault conviction is not necessarily a crime of domestic violence. For example, the majority asserts a wife and mother could be convicted of domestic violence under Arizona law for “recklessly running a stop sign and causing a traffic accident that injured her passenger-husband and child.” Maj. Op. 17869. This hypothetical is absurd. Under the Taylor categorical approach, we examine the full range of conduct encompassed by the statute at issue, e.g., Ceron-Sanchez, 222 F.3d at 1172, not the full range of appellate judges’ fanciful imaginings. Like all legal doctrines, the Taylor categorical approach must be applied with reasoned judgment. See United States v. Kaplansky, 42 F.3d 320, 323-24 (6th Cir.1994) (en banc) (employing a commonsense analysis of “the essence of kidnapping” in holding that a violation of an Ohio kidnapping statute, which prohibits removing a person from the place where he is found or restraining his liberty “ ‘by force, threat, or deception” is categorically a violent felony); cf. id. at 329-30 (Merritt, C.J., dissenting) (raising a series of improbable hypotheticals to argue that “it is possible for Kaplansky to have been convicted of ... kidnapping without committing a violent felony”); Flores, 350 F.3d at 672-73.
Running a stop sign and causing a traffic accident with injury would not be prosecuted under the domestic violence law. Such conduct would almost certainly result in a traffic citation for — of all things— reckless driving. See A.R.S. § 28-693. Unsurprisingly, neither Fernandez-Ruiz nor the majority cite a single case in which Arizona has prosecuted conduct remotely like the proffered hypothetical as a domestic violence offense.[1]
B
Even if Fernandez-Ruiz had been convicted of assaulting a stranger, as the majority would have us believe, he would still be deportable under 8 U.S.C. *1140 § 1227(a)(2)(E)© because recklessness is a sufficient mens rea for a crime of violence. The majority argues that Leocal, which explicitly declined to address whether recklessness is a sufficient mens rea for a crime of violence, overruled our consistent precedent on this issue. It did not.
In Ceron-Sanchez, we held that a conviction under A.R.S. § 13-1203(A)(1) was categorically a “crime of violence” for purposes of 18 U.S.C. § 16(a), reasoning that reckless conduct that causes physical injury necessarily involves the use of physical force. 222 F.3d at 1172-73. We expanded on this reasoning in United States v. Trinidad-Aquino, where we held that a negligent drunk driving offense did not qualify as a crime of violence, but explained “that recklessness is a sufficient mens rea for a ‘crime of violence’ ” because
recklessness requires conscious disregard of a risk of a harm that the defendant is aware of — a volitional requirement absent in negligence. A volitional definition of “use ... against” encompasses conscious disregard of a potential physical impact on someone or something' — -it does not encompass non-volitional negligence as to that impact.
259 F.3d 1140, 1146 (9th Cir.2001) (omission in original); see also United States v. Hermoso-Garcia, 413 F.3d 1085, 1089 (9th Cir.2005) (reckless assault is categorically a crime of violence); United States v. Grajedar-Ramirez, 348 F.3d 1123, 1125 (9th Cir.2003) (reckless vehicular assault is categorically a crime of violence).[2] This logic remains sound and forecloses Fernandez-Ruiz’s argument that his conviction is not categorically a crime of domestic violence.
Leocal, which addressed a strict liability DUI offense, does not disturb our eonsistent precedent on this issue. The petitioner in Leocal violated a Florida statute making it a crime to operate a vehicle while under the influence and, “by reason of such operation, cause[ ] ... [sjerious bodily injury to another.” Fla. Stat. § 316.193(3)(c)(2). In determining that the conviction was not categorically a crime of violence for purposes of § 16(a), the Court noted that the Florida statute “does not require proof of any particular mental state” and emphasized that the
critical aspect of § 16(a) is that a crime of violence is one involving the “use ... of physical force against the person or property of another.” ... “[U]se” requires active employment. While one may, in theory, actively employ something in an accidental manner, it is much less natural to say that a person actively employs physical force against another person by accident. Thus, a person would “use ... physical force against” another when pushing him; however, we would not ordinarily say a person “use[s] ... physical force against” another by stumbling and falling into him.... The key phrase in § 16(a) ... most naturally suggests a higher degree of intent than negligent or merely accidental conduct.
Leocal, 543 U.S. at 7, 9, 125 S.Ct. 377 (citations omitted) (first, third, and fourth omissions in original).
The “bedrock principle” of Leocal is not, as the majority asserts, that “an offense must involve the intentional use of force” to be a crime of violence, Maj. Op. at 1132, but rather that merely accidental or negligent DUI crimes are not crimes of violence. It is unclear whether Leocal extends beyond DUI offenses, and, in any event, it explicitly left open “the question *1141 whether a state or federal offense that requires proof of the reckless use of force against a person or property of another qualifies as a crime of violence under 18 U.S.C. § 16.” 543 U.S. at 13, 125 S.Ct. 377. Leocal informs our analysis insofar as it emphasizes that the key issue in determining whether a predicate conviction satisfies § 16(a) is whether the conviction involved an active employment of force. See id. at 11, 125 S.Ct. 377 (emphasizing that § 16 “suggests a category of violent, active crimes”).
Fernandez-Ruiz’s conviction necessarily involved an active employment of force. The minimum mens rea for a violation of A.R.S. § 13-1203(A)(1) is recklessness, which Arizona defines as,
with respect to a result or to a circumstance described by a statute defining an offense, that a person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard of such risk constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation. A person who creates such a risk but is unaware of such risk solely by reason of voluntary intoxication also acts recklessly with respect to such risk.
A.R.S. § 13-105(9)(c). Fernandez-Ruiz therefore must have at least “consciously disregarded” the risk of physically injuring his girlfriend. Conscious disregard includes an element of volition: One must be aware of a substantial and unjustifiable risk and affirmatively choose to act notwithstanding that risk. See Trinidad-Aquino, 259 F.3d at 1145-46 (cited approvingly in Leocal, 543 U.S. at 9, 125 S.Ct. 377); see also Vucinich v. Paine, Webber, Jackson & Curtis, Inc., 739 F.2d 1434, 1435 (9th Cir.1984) (per curiam) (“Rather than being merely a greater degree of ordinary negligence, recklessness is closer to a lesser form of intent.” (internal quotation marks omitted)); People v. Lara, 44 Cal.App.4th 102, 107-08, 51 Cal.Rptr.2d 402 (1996). “Unlike a person who accidentally injures another person, a person who acts recklessly in bringing about harm to another is aware of the nature of his conduct and thus can be said to be ‘actively employfing]’ the physical force that results in injury ‘against another.’ ” Bejarano-Urrutia v. Gonzales, 413 F.3d 444, 449-50 (4th Cir.2005) (Niemeyer, J., dissenting) (quoting Leocal, 543 U.S. at 9, 125 S.Ct. 377, and citing Trinidad-Aquino, 259 F.3d at 1146). Recklessness thus requires a volitional, active decision, which necessarily involves “a higher degree of intent than negligent or merely accidental conduct,” Leocal, 543 U.S. at 9, 125 S.Ct. 377, and satisfies § 16(a)’s “use ... of physical force” requirement. Nothing in Leocal requires us to overrule Ceron-Sanchez or reinterpret Trinidadr-Aquino.
In holding that recklessness is not a sufficient mens rea for a crime of violence, the majority misreads Leocal. The majority asserts that because (1) Leocal holds that accidental conduct cannot be a crime of violence, see Leocal, 543 U.S. at 9, 125 S.Ct. 377; (2) accidental conduct is by definition “ ‘[n]ot ... purposeful,’ ” Maj. Op. at 17868 (alteration in original) (quoting Black’s Law Dictionary 16 (8th ed.2004)); and (3) reckless conduct is also not purposeful; Leocal compels the conclusion that “the reckless use of force is ‘accidental’ and crimes of recklessness cannot be crimes of violence.” Maj. Op. at 17868. This argument defies logic.
The fact that neither negligence nor recklessness is purposeful does not mean that they are identical, or that recklessness, like negligence, necessarily falls outside the scope of § 16(a). Recklessness is a distinct mens rea, which lies closer to *1142 intentionality than to negligence. See Vucinick, 739 F.2d at 1435. Leocal’s statement that “negligent or merely accidental conduct” does not satisfy § 16(a), 543 U.S. at 9,125 S.Ct. 377, in no way suggests that intentional conduct is required or that recklessness is an insufficient mens rea for a crime of violence. See Bejarano-Urrutia, 413 F.3d at 449-50. Indeed, the Leo-cal Court specifically declined to decide that issue. See 543 U.S. at 13, 125 S.Ct. 377. The majority, like the opinions from the Third and Fourth Circuit on which it relies, ignores the important differences between negligence and recklessness and improperly reads an intentionality requirement into Leocal. See Oyebanji v. Gonzales, 418 F.3d 260, 264-65 (3d Cir.2005) (conviction for vehicular homicide based on driving under the influence); Tran v. Gonzales, 414 F.3d 464, 470-71 (3d Cir.2005) (conviction for reckless burning or exploding); Bejarano-Urrutia, 413 F.3d at 447 (majority opinion) (conviction for involuntary manslaughter based on driving under the influence).[3]
Because the plain language of § 16(a) is clear, the rule of lenity does not apply, see Lisbey v. Gonzales, 420 F.3d 930, 933 (9th Cir.2005); nor need we consult the statute’s legislative history. Nevertheless, were we to look to legislative history, it would confirm that Fernandez-Ruiz’s conviction is a crime of violence. The Senate Report accompanying the Comprehensive Crime Control Act of 1984, which enacted 18 U.S.C. § 16, states that a “crime of violence” under § 16(a) “would include a threatened or attempted simple assault or battery on another person.” S.Rep. No. 98-225, at 307 (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3486-87 (footnotes omitted). Congress thus intended to include both simple assault and battery in the definition of a “crime of violence.” Battery is traditionally defined as “the unlawful application of force to the person of another,” committed with a mental state of at least criminal negligence or recklessness. See Black’s Law Dictionary 139 (5th ed.1979); Model Penal Code § 2U.l(l)(a) (a person is guilty of battery if he “purposely, knowingly or recklessly causes bodily injury to another”);[4]
Wayne R. LaFave, Substantive Criminal Law § 16.2 (2d ed.2003) (similar). A violation of the Arizona statute at issue, which incorporates the Model Penal Code’s definition of battery, see A.R.S. § 13-1203(A); State v. Mathews, 130 Ariz. 46, 633 P.2d 1039, 1042 (Ct.App.1981), is therefore categorically a “crime of violence” as that term is used in § 16(a). To read the legislative history otherwise, to suggest that Congress intended simple assault but not battery to be a “crime of violence,” is both incorrect and leads to an awkward result: An alien would be removable for attempting or threatening to harm someone but not for actually injuring his spouse through reckless conduct. It is unlikely Congress intended such an outcome.
C
After mistakenly concluding that Fernandez-Ruiz’s conviction was not cate *1143 gorically a crime of violence, the majority compounds its error by refusing the government’s request that we remand to the BIA to allow the government to further develop the record so that the BIA may apply the modified categorical approach. The BIA never decided whether Fernandez-Ruiz’s conviction was a crime of violence under the modified categorical approach because, until the majority’s decision today, Fernandez-Ruiz’s conviction was categorically a crime of violence. See Ceron-Sanchez, 222 F.3d 1169. For the same reason, the government had no reason to identify, obtain, or introduce evidence demonstrating that Fernandez-Ruiz “use[d] ... physical force against the person or property of another” and therefore that his 2003 conviction was a crime of domestic violence under the majority’s highly restrictive approach.
In light of the new rule the majority announces, the proper course is to remand to the BIA so that it may apply the modified categorical approach in the first instance. See Gonzales v. Thomas, — U.S. -,----, 126 S.Ct. 1613, 1614-15, 164 L.Ed.2d 358 (2006) (per curiam); INS v. Ventura, 537 U.S. 12, 16-17, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002) (per curiam). As the majority concedes, Notash v. Gonzales is inapposite because, unlike here, there was no intervening change in law that made the modified categorical approach relevant where it had not been so before and therefore justified the government’s failure to introduce evidence relevant to the modified categorical approach. 427 F.3d 693 (9th Cir.2005). Nor is there any merit in the majority’s entirely unsupported assertion that the government has waived its right to a Ventura remand because it has not specifically stated that “it failed to anticipate the necessity of introducing documents of conviction demonstrating Fernandez-Ruiz’s offense was a crime of domestic violence under the modified categorical approach.” Maj. Op. at 1135.
* * * *
Consistent with the plain language of 18 U.S.C. § 16(a), Congress’s intent, and our precedent, I would hold that a conviction under the Arizona statutes at issue here is categorically a crime of domestic violence.

. In lieu of domestic violence prosecutions the majority offers two cases in which assault convictions were upheld when automobile passengers were injured. See State v. Miles, 211 Ariz. 475, 123 P.3d 669, 675-76 (Ct.App. 2005) (affirming aggravated assault conviction after acquittal of DUI); State v. Freeland, 176 Ariz. 544, 863 P.2d 263, 265-66 (Ct.App. 1993) (affirming aggravated assault conviction in DUI case). These cases do not even hint at prosecution for domestic violence.

. Lara-Cazares v. Gonzales, in which we held that under Leocal a California conviction for gross vehicular manslaughter while intoxicated is not categorically a crime of violence, is inapposite both because it involved a DUI offense and because the statute at issue required only a mens rea of gross negligence. 408 F.3d 1217, 1221 (9th Cir.2005).

. The majority also incorrectly relies on a discussion of recklessness in the context of § 16(b) to bolster its argument that force must be instrumental in the execution of the crime to qualify as ''use” under § 16(a). See Maj. Op. at 1130 (quoting Leocal, 543 U.S. at 10, 125 S.Ct. 377). In Oyebanji, the Third Circuit’s analysis was also only of § 16(b). 418 F.3d at 264. Further, unlike the majority here, the Third Circuit did not make a blanket post-Leocal announcement about crimes with a recklessness mens rea. In each case that court examined the actual crime of conviction in reaching its conclusion.

. Section 211.1 is entitled “Assault” but incorporates the crime of battery. See 2 Am. Law Inst., Model Penal Code & Commentaries § 211.1 cmt.2, at 183-84 (1980).